GIPPIE JACKSON v. THE STATE.

No. 3007.  Decided March 25, 1904.

**1.—Information—Ownership of Minor.**

Where the property alleged to have been stolen was shown to have been that of a minor, under his exclusive care, control and management, the ownership could have been alleged in him or his parent, and an information alleging ownership in both was sufficient.

**2.—Charge of the Court—Receiving Stolen Property.**

If appellant was not in some way connected with the original taking, so as to constitute him as a principal, he would not be guilty of theft, even though he should have received the property knowing it to have been stolen.

**3.—Same—Conflicting Theories.**

Where the evidence conflicted as to whether the State's theory, that the accomplice committed the theft at appellant's request, or whether appellant's theory, that if the accomplice committed the theft it was without his instigation, connivance or knowledge, was true, the court should have charged the jury that if they believed that appellant's theory was true they could not convict him.

Appeal from the County Court of Collin.  Tried below before Hon. F. E. Wilcox.

Appeal from a conviction of theft; penalty, a fine of $25 and three months confinement in the county jail.

The opinion states the case.

No brief for appellant.

*Howard Martin,* Assistant Attorney-General, *R. C. Merrit,* and *L. J. Truett,* for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of theft, his punishment being assessed at a fine of $25 and three months confinement in the county jail.

The information contains two counts: the first, charging theft of a pair of pants from possession of Pete Lucas; and the other from Pete Lucas and Mrs. Nannie Lucas.  The evidence shows that Pete Lucas was a minor about 18 years of age, and the owner of the pants, living with his father and mother.  He testified the pants were his, and under his exclusive care, control and management.  It is contended that, under this state of case, the ownership could not be legally in the minor, but must be alleged in the parent.  The ownership could have been alleged to either.  Wright v. State, 35 Texas Crim. Rep., 470.  Under the evidence for the State the case was clearly made out and the charge was sufficient in this respect.  Appellant accounted for his possession by stating that Clarence Wilkins, the main State's witness, wanted him to go to Dallas with him, and that he (defendant) replied, "I have no pants fit to wear."  That Clarence then said, "I will let you have some."  Defendant replied, "I could not wear your knee-breeches."  Clarence

then said, "I have some long breeches." He then went, secured, brought and gave the pants to appellant, who wore them to Dallas. Clarence did not tell him where he got the pants until they reached Dallas. Appellant requested the court, in substance, by written instruction, to charge the jury in regard to this state of case; and that if the facts stated were believed by the jury to be true, or there was a reasonable doubt as to their truthfulness they should acquit. The instruction was refused. It should have been given. If appellant was not in some way connected with the original taking, so as to constitute him a principal, he would not be guilty of the theft, even though he should have received the property knowing it to have been stolen. Under this statement, if the jury believe appellant came in possession of the property as stated by him, he could not be guilty of the theft. Because the court refused to instruct the jury as requested by appellant, on this phase of the testimony, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

May 11, 1904.

DAVIDSON, Presiding Judge.—At our recent Dallas term the judgment herein was reversed and the cause remanded. The State makes a motion for rehearing with the request to recall the mandate. The judgment was reversed because of the refusal of the court to give instructions requested by appellant, the theory of the State being that appellant would be guilty even under such requested instructions. The facts show, for the State, that the accomplice Clarence Wilkins at the request of appellant committed the theft, and that although appellant was not present when the theft was committed, it having been done at his instigation and request, by Wilkins, that this constitutes appellant a principal, the case being a misdemeanor. Appellant's theory is that, if Wilkins committed the theft of the pants, it was without his connivance, instigation or knowledge. The original opinion states that appellant requested the court, in substance, by written instructions, to charge the jury in regard to the state of case made by his account of his possession of the pants, and if the facts stated were believed by the jury to be true, or there was a reasonable doubt in their minds of its truthfulness, they should acquit. These requested instructions were refused and the judgment reversed because of such refusal. The opinion further states: "If appellant was not in some way connected with the original taking, so as to constitute him a principal, he would not be guilty of the theft, even though he should have received the property knowing it to have been stolen. Under this statement, if the jury believe appellant came in possession of the property as stated by him, he could not be guilty of the theft." The motion for rehearing seems to be predicated on the theory that the reversal occurred upon one of the requested instructions, which is as follows: "If you find and believe

from the evidence that Clarence Wilkins asked the defendant to go with him to Dallas, and defendant answered him that he had no pants, and thereupon Clarence Wilkins obtained the clothes, or if you have a reasonable doubt on this point, you will find defendant not guilty." This was only one of the requested instructions. The theory of the State being that the facts stated in this requested instruction did not militate against the State's case, for the reason that the evidence introduced for the State excluded appellant's presence at the time of the taking, and that he took them through the agency of Clarence Wilkins. The opinion did not specify any particular charge, but held that the court erred in not giving the appellant's theory as made by his account of his possession. There are several of these charges requested, seeking to submit appellant's theory of the case. For instance, this was requested and refused: "Unless the evidence in the case satisfies you beyond a reasonable doubt of the connection of defendant with the taking of the pants, before the same were taken, you will find defendant not guilty, even though you should believe from the evidence that defendant obtained said pants from Clarence Wilkins, knowing that Clarence Wilkins had wrongfully obtained them." Another requested instruction is in the following language: "Before you would be authorized to convict upon the testimony of Clarence Wilkins, it is necessary for him to be corroborated upon the taking of the pants from the possession of the prosecutor, but it must also show the guilty connection of defendant prior to and before the taking of the goods, if you find they were taken at all. And in this connection you are charged that no act, statement or declaration made by Clarence Wilkins subsequent to the alleged taking can be considered by you as corroborating his testimony. The court further instructs you that said corroboration is absolutely essential to a conviction, although the jury may believe the testimony of Clarence Wilkins to be true, still they can not convict, unless they further believe there is other testimony outside of his evidence tending to connect defendant with the commission of the offense." These instructions were all refused and are properly presented for revision. The court gave a general charge on accomplice testimony, and informed the jury that Wilkins was an accomplice and a conviction could not be had on his testimony. The testimony is rather weak on the question of corroboration, and comes from the witness McCowan, who states that he saw appellant and Clarence Wilkins in the city of Dallas in the summer time. He asked appellant where he got the pants. He said that he won them on a game of craps. Subsequently he saw appellant and remarked to him, I "know you didn't win them pants at no crap game." Appellant then said, "he got them from Pete at McKinney. He said he made Happy get them, or he got Happy to get them—I think it was that he got Happy to get them. I can not state the exact language, but it was one or the other. They called Clarence Wilkins Happy Hooligan. I don't know who defendant meant. There are several Petes here." Witness Clarence Wilkins ad-

mitted on the stand that he told Mr. Grisham, one of the appellant's attorneys, that he got these pants for another boy, not appellant, and that he afterwards met appellant and gave them to him; and did not inform appellant where he got them until they arrived at Dallas. He says this was not the truth; that he was not then swearing. We have not now repeated all the requested instructions which were refused. These charges should have been given. The case as made seems to have been drawn rather sharply as to whether or not appellant instigated Clarence Wilkins to steal the pants. There is no question in the record, if Wilkins tells the truth, that he got the pants; and it is equally true, under any theory of the case, that appellant was not present when he got them. It is certain if there is any truth in the evidence that appellant got these pants from Wilkins, the issue was very sharp as to his guilty connection with the taking. If his version of it is true he had nothing to do with it, and the statements of Wilkins off the witness stand admitted by him on the witness stand, showed appellant had no connection with the taking or advising Wilkins to take them. Appellant sought to present this view by the written requested instructions and was denied. This refusal was error. We see no reason to change the views heretofore expressed; and therefore the request to recall the mandate and affirm the judgment is refused.

*Motion for rehearing overruled.*